### THE PRESIDENT ROOSEVELT.
### No. 84.

Circuit Court of Appeals, Second Circuit.

Dec. 30, 1940.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

Crowell & Rouse, of New York City (E. Curtis Rouse, of New York City, of counsel), for appellant.

William C. Chanler, Corp. Counsel, of New York City (George Seagrave Franklin, of New York City, of counsel), for appellee.

### SWAN, Circuit Judge.

This is a suit upon a contract awarded to the appellant to convert one of the city's coal-burning ferryboats into an oil burner. The libel set forth two causes of action, the first for the unpaid balance of the contract price and the second for $2,763 and interest for extra work ordered by the city. The two causes of action were severed. This appeal relates only to the second, which was dismissed on the ground that the alleged extra work was required by the contract.

The contract price was $102,000. For this sum the appellant was to supply all necessary labor and materials "for furnishing and installing oil-burner equipment and alterations, repairs and renewals in connection therewith." During the progress of the work the contractor removed the coal from the bunkers and laid open to view the reverse bars in the area of its work. They were found to be badly corroded and were condemned by the United States Local Steamboat Inspectors. The contractor submitted an estimate of the cost for renewing the condemned reverse bars "in both boiler rooms in way of boiler foundations and fuel oil tank foundations as directed by the City Inspector." The city replied that the work was required by the terms of the contract to be done at the contractor's expense, and directed the appellant to proceed with it. Without a settlement of the dispute and in order not to incur the penalty provided for delay in performance of the contract, the appellant renewed the condemned reverse bars. It is conceded that the amount sued for is the proper amount, if the appellant is entitled to any recovery.

The issue is a narrow one. It involves a construction of the contract and specifications. Paragraph 4 of Item 1 of the specifications provides: "Any parts of the hull, boilers, fittings, fixtures, etc., etc., disturbed or removed in order to carry out the work which are damaged by the Contractor or are otherwise found to be unfit for further use shall be renewed by the Contractor as required by the Department and at the Contractor's expense." Reverse bars are angle irons curved in the reverse arc to the frames and fastened with one flat side against one side of the projecting flange of the frames. They strengthen the hull and, as a witness testified, are part of it.

The appellant contends that the city impliedly warranted that it would supply a sound hull in which the conversion could take place; that the district court's construction of the quoted clause is the same as though it read "any parts of the hull found unfit" shall be renewed at the contractor's expense, and that such a construction is most unreasonable as it would require the contractor to make any needed repairs, however disconnected with converting the vessel into an oil-burner. We agree that the contract never meant that; it was not for a general reconditioning, but was limited to the installation of oil-burner equipment and "alterations, repairs and renewals in connection therewith". But the testimony of witness Ross, to which strangely enough neither brief refers, established that the renewed reverse bars support the foundations of the boilers and fuel oil tank which the contractor installed. His testimony was as follows:

"Q. Do you remember the incident of those bars being condemned? A. Yes, sir.

"Q. When was that condemnation with respect to the installation work, before or after? A. That was after we moved the coal from the coal bunkers.

"Q. Before you put in your own work? A. Yes.

"Q. Were all those bars condemned and replaced in the area of your work? A. Yes, sir.

422

"Q. All were in that area? A. Yes.

"Q. Tell us what the condition was there. A. They were all very bad, all corroded. They were corroded on the reverse bars.

"Q. Isn't it true that the supporting members of the foundations that you put in were to be fastened to the frames and not the reverse bars? A. We had to fasten them to the frame and reverse bars, that is, on the tank foundations, but on the boiler foundations we just went over them and welded on to the reverse frames."

\* \* \* \* \* \*

"Q. I am asking about your foundations. Were they fastened to each and every reverse bar as it came along on the ship, or on every third, for instance, or every fifth one? A. On every one, on every reverse bar.

"Q. Was your foundation fastened to every reverse bar? A. Yes.

"Q. The frames themselves were not renewed? A. No.

"Q. They were not condemned? A. No.

"Q. And your supports were fastened to the frames? A. Yes, sir, probably an inch crossing over it, that is, welded on both sides of the foundation."

Thus it appears that the renewals were of bars that were used in the work contracted to be done; they were not renewals of parts unconnected with the work and requiring renewal merely to make the vessel seaworthy in general. While it is true that the contractor had no means of knowing when it entered into the contract what was the condition of the frames and reverse bars below the bunkers, it was willing to undertake the risk of renewals necessary for the installation of the oil-burner equipment. Paragraph 2 of Item 1 of the specifications provides that all work necessary to provide a complete conversion should be done in accordance with requirements of the Bureau of Marine Inspection and Navigation and all materials necessary to comply with such requirements, "whether specifically mentioned herein or not", should be furnished at the contractor's expense. The same thought again appears in paragraph 5 of Item 1. In Item 3, on page 19, the specifications provide that the brick pan supports shall be attached to the boiler girders and "the ship frames and reverse frames similar to present supports." The reference to "reverse frames" we understand to mean the same as reverse bars. In our opinion, therefore, the appellant was bound by its contract to supply renewals of the reverse bars to which the new foundations were to be attached, if the Local Inspectors required them to be renewed in order to comply with the rules of the Bureau of Marine Inspection and Navigation.

Decree affirmed.